# Pierce *v.* Tidwell *et al.*

*Action on Common Counts and Special Count on Written Contract.*

1. *Written contract construed, as to meaning of " said mine."*—Under a written contract, signed both by plaintiffs and defendant, by which the former agreed, " for the consideration of $20 per month, to give said P. [defendant] his heirs and assigns, the exclusive right to possession

[Pierce v. Tidwell.]

of all minerals that underlie their land, which forms part of the *mine* called and known as the *Pierce Warrior Coal Mine,* and to all timber growing thereon suitable for mining purposes, and to grant a right of way to and from the mines wherever it may be required; and by which it is "further agreed, that the said $20 shall be paid only as long as the *said·mine* is worked, and to advantage"; *held,* that the words "*said mine*" refer to the mine particularly named and described, and can not be referred to an excavation for mining purposes opened on plaintiff's mineral lands, and which formed only a part of the "Pierce Warrior Coal Mine."

2. *Same ; parol evidence explaining or contradicting.*—The said written contract not being ambiguous, parol evidence can not be received to show that the payment of $20 monthly was to cease when defendant ceased to work, not the mine particularly described, but the excavation on plaintiff's lands, which formed a part of said mine.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

The appellees, Benjamin Tidwell, Mary E. C. Tidwell, and Hannah Pamelia Tidwell, brought suit against the appellant, J. T. Pierce. The complaint contained the "common counts," and, also, a special count on the following written contract : "This agreement made this the 13th day of September, 1879, by and between J. T. Pierce, of Pierceville Warrior, Jefferson county, Alabama, and Benjamin Tidwell, Hannah Pamelia Tidwell, his wife, and Mary E. C. Tidwell, his daughter; witnesseth, that the said Benjamin, Hannah Pamelia, and Mary E. C. Tidwell, jointly, for the consideration of $20.00 per month, agree to give said J. T. Pierce, his heirs and assigns, the exclusive right to possession of all minerals that underlie their land, which forms part of the mine called and known as the Pierce Warrior Coal Mine, situate and being the west half of south west quarter, in section 12, township 14, range 3, west, and to all timber growing thereon, suitable for mining purposes, and to grant a right of way to and from the mines wherever it may be required ; also, will give a good and sufficient title to the above named property, and will defend same against all lawful claims whatever ; and it is further agreed, by and between the parties aforesaid, that all contracts and engagements hitherto in existence between them, and also, J. W. Jones, shall be cancelled and be null and void, and that all former debts and all claims whatsoever against either party named herein, are hereby annulled, and it is further agreed, that *the aforesaid* $20.00 *per month shall be paid only as long as the said mine is worked, and to an advantage.* In witness whereof we hereunto subscribe our names and affix our seal this day and date first above written." (Signed) " J. T. Pierce, Mary E. C. Tidwell, Benjamin Tidwell, Hannah Pamelia Tidwell."

[Pierce v. Tidwell.]

The judgment entry recites, that a special plea was filed and a demurrer sustained thereto, but the plea and demurrer are not set forth, and the only pleas which appear in the record are, "non-assumpsit, payment and set-off," which were pleaded in short by consent.

On the trial, the plaintiffs duly proved and introduced in evidence the above contract, and, also, a deed from plaintiffs to defendant, executed pursuant to said contract and bearing the same date, the material part of which is as follows :

"The State of Alabama, } Know all men by these presents, Jefferson county.      { that we, Benjamin, Hannah, Pamelia,, and Mary E. C. Tidwell, for and in consideration of the sum of $20.00 per month to be paid by J. T. Pierce to us, subject to such contingencies and conditions as are named and set forth in an agreement made this day between the said Pierce and ourselves, and bearing our signatures thereon, do by these presents, jointly and separately, bargain, sell and convey to said Pierce, his heirs and assigns forever, the following described mineral property, to-wit, all the minerals that underlie and all timber suitable for mining purposes that grows on the west half of south-west quarter, section 12, township 14, range 3, west, being part of *the mine called and known as the Pierce Warrior Coal Mine.*"

The proof tended to show that before the making of the above contract, the defendant had mined coal off the land described in said contract and deed, and known as the "Tidwell Tract," under another contract with plaintiffs, and that said land originally had about thirty acres of coal, and to the time of the making of the contract sued on, twenty acres thereof had been mined ; that from the date of the contract sued on, Sept. 13, 1879, to about March 1, 1884, defendant mined coal off said "Tidwell Tract," and paid plaintiffs $20 per month during said time, but about said last named day, the coal on the "Tidwell Tract" became exhausted and defendant ceased to mine thereon, and refused from that time to pay plaintiffs anything; that defendant continued to the time this suit was brought to mine coal to an advantage on what was known as the "Rivers Tract," which adjoined the "Tidwell Tract," and also on lands of plaintiffs in section 13 ; that at the time of making the contract sued on, defendant was, and for years previous had been, mining coal on all of said three tracts in separate pits or excavations, and the business was carried on under one general management, and these tracts adjoined each other, and they and the mines thereon were known as the "Pierce Warrior Coal Mines," and that up to the time this suit was brought, defendant carried the coal mined on the "Rivers

Tract" across a part of the "Tidwell Tract" for shipment on the railroad. There was, also, proof tending to show that at the rate defendant was mining coal, Sept. 13, 1879, when the contract was made, it would take 300 years to mine the coal on the "Rivers Tract" and section 13.

W. C. Isaacs, a witness for defendant, having testified that he drew up said contract and deed between the parties and they were signed in his presence, defendant offered to prove by him, 1st, "What was said by the parties to the contract, at the time the papers were executed, as to the duration of the contract, and in what event the payment of the $20.00 per month was to cease; 2d, "What the understanding between the parties was at the time the contract was executed, as to the time the payment of the monthly installments was to continue;" 3d, "That, at the time of the execution of the contract, it was understood and agreed between the parties, that the defendant was to pay $20.00 per month only so long as the coal on the 'Tidwell Tract' could be mined and to an advantage." The court, on the objection of plaintiffs, refused separately to allow each portion of the above proof to be made, and defendant separately excepted to each refusal.

Defendant offered to prove the contents of his contract with plaintiffs, under which he had for years previous to the making of the contract sued on, mined coal on the "Tidwell Tract," and that said contract, by agreement of the parties, had been cancelled and destroyed. The court, on the objection of plaintiffs, refused to allow this proof to be made, and defendant excepted.

The court in the general charge, among other things, instructed the jury as follows: "The construction of the written contract is the duty of the court. My construction of the contract in this case is, that the condition as to the operation of the mine applies to and means the operation to advantage of "The Pierce Warrior Coal Mines," whatever that may be; and that if the said "Tidwell Tract" formed only a part of the Pierce Warrior Coal Mine, as understood at the time of the contract, and if said Pierce Warrior Coal Mine, as then understood by the parties, was being operated to advantage by mining coal upon other lands contiguous to said "Tidwell Tract," during the time for which the plaintiffs claim, then the obligation upon the defendant to pay during that time also existed." To each and every part of this charge defendant excepted.

The defendant asked five charges, which, in different forms, asserted the proposition, that the defendant was liable to the plaintiffs only so long as the "Tidwell Tract"

was, or could be, worked to advantage. The court refused each of. these charges separately, and defendant excepted to each refusal. The defendant then asked the court to charge the jury, "that, if they believed all the evidence in this case, they must find for the defendant."

The court refused this charge and defendant excepted. The rulings excepted to are assigned as error.

R. H. PEARSON, and WATTS & SON, for appellant.—If there was a *latent* ambiguity, then it was error to reject what was proposed to be proven by Isaacs. It is always competent to show the situation of, and the circumstances surrounding, the parties to the contract, in order to ascertain the true meaning of the contract and their real intention. . Parol evidence is always admissible to explain *latent* ambiguities, local terms, &c., and to apply the instrument to the subject. Bainbridge on the Law of Mines, pp. 221–2. The evidence showed that there were *three* mines, one on the "Tidwell Tract," one on the "Rivers Tract" and one on Section 13, which constituted parts of the "Pierce Warrior Coal Mine;" there was then a *latent* ambiguity, disclosed by evidence *dehors* the contract, and which could only be explained by parol evidence. 2. The language in the contract, "to and from the *mines*," shows that there were several pits or mines. "*Mine*," in the singular number, as used in the contract, then meant the "mine" on the "Tidwell Tract." "So long as the said *mine* is worked, and to an advantage," means the working of the "mine" on the "Tidwell Tract." This further appears from the fact that only the minerals on the "Tidwell Tract" were sold, in connection with the evidence, that only ten acres of coal land was left on that tract at the time of the contract, and it would require 300 years to exhaust, at the then rate of mining, the coal on the other two tracts. The parties could not have contemplated so absurd a contract as that contended for by appellees.

HEWITT, WALKER & PORTER, *contra*.

(No brief came to the hands of the Reporter.)

SOMERVILLE, J.—The contract sued on imposes on the defendant a binding obligation to pay to the plaintiffs the sum of twenty dollars per month so long as "*the said mine* is worked, and to an advantage." What is meant by the "said mine" as used in this written contract between the parties? The plaintiffs contend that it means the mine designated in the contract as "the Pierce Warrior Coal

Mine," which was being worked by the defendant, and in connection with which the land of the plaintiff, called the Tidwell tract, was being used, and of which it formed a part. The defendant, on the other hand, contends that it means the pit or excavation on the Tidwell tract of land, owned by the plaintiffs, in which tract the defendant had purchased the mineral right, also the right to use timber from it, and the right of way over it, for mining purposes. The latter had ceased to be worked, but the defendant still used the right of way over this tract, and preserved by grant, as we have said, the privilege of using timber from it.

The court sustained the plaintiffs' construction of the contract, and we think correctly. There is no ambiguity in the subject-matter referred to—so far as we can see from the face of the paper or otherwise—either latent or patent. The contract sued on, and the deed from the plaintiffs to defendant, granting and conveying to him the mineral rights in the land, and timber on the place, suitable for mining, both having the same date and relating to the same subject-matter, must be construed together.

Each describes but one mine, which is said to be called and known as "the Pierce Warrior Coal Mine," and each describes the Tidwell tract of land as forming a part of this "mine." The "said mine" can, therefore, be referred to no other subject-matter than "the Pierce Warrior Coal Mine." This construction is corroborated by the fact that the defendant is shown to use the right of way over the plaintiffs' land in transporting his coal for shipment to the railroad, and has the right under the contract to use timber from it for mining purposes. The exhaustion of the supply of coal on the land is a contingency not provided for by the terms of the agreement, and is the misfortune of the defendant, not of the plaintiffs. Under the contract, so long as he worked to advantage or profit "the Pierce Warrior Coal Mine," the defendant was liable to the plaintiffs for the sum of twenty dollars per month, agreed by him to be paid.

2. Such being the construction of the written contract, the court properly refused to allow the defendant to introduce any parol evidence for the purpose of proving that the payment of the twenty dollars per month was to cease on a contingency or condition not named in the writing itself, or to otherwise contradict the express terms of the agreement.

Affirmed.